The United States Court of Appeals for the Third Circuit. Oyez, oyez. All persons having business with the Honorable United States Court of Appeals for the Third Circuit are admonished to draw near and give their attention. For this court is now in session. God save the United States and its Honorable Court. Good morning. We will hear argument United States v. Price. Mr. Farrow. Good morning, Your Honors. May it please the Court, my name is Chris Farrow and I represent the appellant, Foster Price, in this matter. I am respectfully requesting two minutes in rebuttal time, Your Honor. Granted. Your Honor, my client, Foster Price, the appellant in this matter, is a drug dealer. And I say that to you based upon the fact that he was indeed convicted of a substantive account of distribution of heroin in which he sold heroin to an undercover police officer. Excuse you for interrupting, but let me just make it absolutely clear for the record. He was convicted of two substantive accounts, counts three and four, correct? That's correct, Your Honor. And you're not challenging them in any respect? I am not. All right. Which, Your Honor, is the reason why I come before you and indicate from the outset that this man is a convicted heroin dealer. And I say that because I feel that if I didn't, I would lose credibility with this Court and it would therefore affect my later arguments. Because the record in this case is replete with instances which I would call, from a defense standpoint, bad facts. And that is numerous individuals testifying that they did, in fact, purchase heroin from my client on varying occasions. Well, your case, in a nutshell, is Price may have conspired with a lot of people and done a lot of bad things, but the government only proved 700-some grams of heroin is attributable to him because whatever his relationship might have been with Ali Patterson, it was not that of a co-conspirator. Is that right? Is that it in a nutshell? To some extent, Your Honor. I think my larger argument is bigger than that, and that is I have attacked the conspiracy as a whole. And that is, regardless of Ali Patterson, which I think is the most glaring instance in which a witness said that he absolutely had nothing to do with my client on a unity of purpose or common scheme type scenario, I think many of the other witnesses who testified, for the most part, said that they simply purchased drugs from my client. So I would essentially not concede, Your Honor, that my client conspired with those individuals. You're looking for evidence of an agreement, which you say was not there. I think that that is correct, Your Honor. And I think in many instances the agreement was, you buy drugs from me, I'll sell drugs to you, which is not a good agreement, and I concede to the court, but it is not a conspiracy that can then bubble up and extend itself to this massive amount, which exceeded one kilogram of heroin. Can't the rational jury, looking at the amounts that were sold by your client to the various people that, at least the district court concluded were co-conspirators, say, look, you don't sell people that amount for personal use. It was clearly being sold because it was going to be sold in turn, and this was part of a common, you can infer a common purpose to distribute heroin by the amounts themselves. Why is that irrational? I think it's irrational because the testimony in this particular case from each individual, and I recall it vividly because it was heartbreaking, is that each one of these individuals testified to a heroin habit that was astronomical, bundles a day, $600 a day habit. And in that regard, Your Honor, I think that the story that was told is that the amounts that my client was selling were not per se amounts that would trigger an inference that they were to be sold at a later date. It's not a per se question though, right? At this juncture, we're bound by a standard that says, if any rational jury could look at the evidence and conclude conspiracy, your client loses, right? And I think that's part of the argument, but the court also focused both counsel on a separate issue, which I think ties into that, Your Honor, and that is, even if we can assume today that a rational jury could take bits and pieces of this testimony and conclude a conspiracy, in my opinion, there is no way that the same jury can take these bits and pieces and cobble it together to infer a conspiracy to distribute one kilogram or more of heroin. What about the – well, you're kind of back into was Patterson a co-conspirator or wasn't he, right? I think that then leads into that argument. Because he – the testimony was that Price fronted heroin to Hoagland, Dotson, and Robinson, and then he'd get paid later after they sold it. That's pretty strong evidence of a conspiracy with those individuals in any event, right? I agree, Your Honor, that there is indicia of a conspiratorial relationship with respect to at least Hoagland, and I think that I would be remiss if I tried to argue to the court that she and her testimony did not indicate that there was a working relationship at some point. However, I still – She did more than that, though. I mean, they cut it. They cut – they bundled it in her apartment, the heroin. He stored it in his ceiling. Why is he – in her ceiling, why is he doing that? She testified that she sold it. Didn't just use, but sold. So Hoagland's pretty strong for a distribution conspiracy, I would think. She very much is, Your Honor. But if we take Hoagland and we take her testimony as true and we add in Dunker, Robinson, Gessner, like the district court did in its findings, we still come up to approximately 700 and some grams of heroin. So we're back to Patterson. We're back to Patterson. And in my opinion, as strong as Hoagland was saying that there was a conspiracy, Patterson was equally strong and unequivocal that there absolutely was not a conspiracy. So what does the exclusion of Patterson from the conspiracy do for your argument on the conviction on count one? It triggers this question, Your Honor, and that is, is the amount charged by the government a substantive element of the offense such that if it's not proved, it vacates the entire conspiracy conviction? And the government, and I think there's no argument about this, did in fact charge my client with a conspiracy to distribute a certain amount of heroin, one kilogram of more. So every time an indictment is returned that mentions an amount, it then becomes an element, where it wouldn't be an element if it weren't mentioned. Once it's contained in the count, it is an element. Yes. And I believe that that argument is rooted in some of the other courts that have already addressed this issue, because obviously based upon the finding in Apprendi, we now know and agree that if an element of a criminal offense exceeds the possible statutory maximum, it therefore must be proven beyond a reasonable doubt. There is no doubt that the distribution in excess of one kilogram of heroin changes the applicable statutory maximum from 20 years for an indeterminate amount to life with one kilogram or more. So the government's argument is that we charged that, but we really didn't have to prove it. He got over the statutory maximum, but don't worry, there's some other things in there that can make up for the difference. I think that it's kind of like putting toothpaste back in the tube. Once you take that responsibility and you go to a jury and you say, we are going to prove these charges beyond a reasonable doubt, we are then going to seek a sentence up to life in prison, you can't then backtrack and say, well, we kind of got close and the sentence was all right. I think once you pick up that burden, you're responsible to carry it beyond a reasonable doubt, and failure to do so should result in not meeting that burden.  I mean, there are three elements of the distribution conspiracy. And you're saying because the government put it in the indictment, it becomes an element? Well, Your Honor, I always think that there is still, and I think when you're referring to the three elements of a conspiracy, you're referring to the conspiracy language in Gibbs announced in Pressler, unity of purpose. But those three elements never mention drugs either. And so there's always a fourth element, and that is you have to deal drugs, or you have to conspire to commit some other crime. So there's always a fourth element, and in my opinion, in a drug case, when you charge an amount, you now have a fifth element. But isn't your Apprendi argument only applicable if the sentence exceeds what the jury could have found the defendant culpable for distributing? Isn't that where Apprendi comes in? So if you excise the Patterson amount and you get this down to 700 grams of heroin, and so long as the sentence doesn't exceed what you get for that, doesn't that satisfy Apprendi? No, because I think then what you're doing is allowing the government to bootstrap themselves into a statutory maximum that they never sought nor proved at trial. But the jury could choose to find that he sold 1 gram or 1,000 grams of heroin. Could they not? They could. And is there any indication that that wasn't the case here? There is no indication. So consequently, absent any indication that that wasn't the case, and the fact that the sentence is within the range permissible if you subtract the Patterson quantity, I don't see how you can argue there's an Apprendi problem. Well, the Apprendi problem, I think, comes in because I think Apprendi creates the elements of the offense before we start. And that is, I don't think a defendant is forced to, after the trial, I wonder if that was an element. I wonder if we should have contested this. I wonder if we should have done that. A defendant is entitled to know what the elements of the offense are that are being charged against him and being proven beyond a reasonable doubt. The government told this defendant, you're charged with conspiring to distribute a kilogram or more of heroin. The defendant denied that and exercises right to a trial. The government did not meet their burden on the elements that they established, and therefore they can't come back and say, we got pretty close. We got to 700, and so therefore it's okay. Going back to Patterson a second, how can you argue that no rational juror could find that Patterson and Price were involved in an agreement, implicit or explicit, to distribute heroin? Well, I'd simply use the government's evidence. The government called Patterson, and the standard that we have here today is that we review the evidence in light most favorable to the government, and their witness, Mr. Patterson, said, I did not conspire with the appellant. I'm going to get to that with the government, but the government never even asked Patterson that question on direct. You had to ask him. That's a whole other issue. I asked him, and I got the answer, which I believe is the true answer from their witness, and that is there was no conspiracy. Well, that's Patterson's answer, but that's not the only evidence of a conspiracy. You have Hoagland's testimony. You have testimony of others that clearly Price put them in contact with Patterson, knowing that Patterson had quantities that he may not have had or may not have had at the time they wanted it. And isn't that enough to implicitly prove an agreement to distribute to his friends and cohorts from Pennsylvania? I'm not certain, Your Honor, because I think there's some language in the question. You said you're not certain of the test is any rational juror. It's even harder than, you know, by you saying you're not certain, you almost become any rational juror. Well, Your Honor, what I think is interesting is the language that's utilized in the Pressler case, which I utilized in my brief, in which the court indicated that many times certain people will refer another to a favorite restaurant, and that does not make you complicit in the individual then going to eat the food at that restaurant. In this case, as awful and ugly as this is, the testimony indicates that my client referred a drug fiend to another drug dealer with no expectation that he would receive anything in exchange. There was no cut of the proceeds. Is that crucial, though? You know, the conspiracy has to be that there be some common purpose, but that doesn't necessarily involve a distribution of profits according to some schedule. Can't there be a conspiracy that's a little bit like doctors covering each other on call? Look, I'm not going to be able to cover people this weekend, so you cover people this weekend. And that in and of itself, supporting one another's business efforts in that manner, would that be insufficient to support a conspiracy conviction as a matter of law? I think the doctor analogy is good and adequate, but in this case I don't think it's the same as the facts we have here, in that I'm not certain that the doctors, Price and Vegas, ever had that conversation. That's nowhere in the record. Do they have to have an explicit conversation? I mean, by its very nature, these are the sorts of things that are done sub rosa, that people don't write out their mutual drug distribution covering agreements for each other. But they do, apparently, in this case, according to the government, they do share common distribution lines and they do refer clients to one another and they do move their business forward by supporting each other in the distribution of drugs. Now, I mean, there is that evidence in the record, isn't there? I think that the inference which the court is taking is a few leaps beyond the actual facts in the record, and that is that these two people knew each other and that he told Ms. Hoagland that if you wanted to get drugs, you can go down to this guy. Well, they said they knew each other, that's not disputed, right? That's not disputed. But he didn't send her to Hoagland merely so that she could get heroin for her own use. She used the word profits and she talked about once she started to get all of this heroin from Patterson, she no longer had to pay her profits to Price. So she was in there dealing. She was in there selling, not just using. I agree with that. And she was getting the heroin she was selling from Patterson. Is it not a permissible inference that Price understood that because he knew she was selling heroin? It's a permissible inference, but I think… Isn't that what we look at, given the standard of review that we must use at this point in the case? Well, because this is so distasteful and because there are so many players who are, again, I'll use the same word, distasteful, I think we're looking for inferences and ignoring the actual testimony, and that is why search for inferences when we actually have testimony on the record, uncontradicted? Hoagland testifies in Volume 3, page 36. She had her dealings with Giardina, who's the individual by the name of Spider, and Vegas had nothing to do with Appellant. That's her testimony. But aren't you – you're asking us to weigh the evidence here in a way that's not favorable to the government. I mean, that's not what we're bound to do. When you say why look at inferences when you've got direct evidence, we've got to look at all the evidence. And, in fact, at this point, we have to look at it in the light most favorable to your opponent. We're bound to do that. And if we do take that approach, take Giardina, for example. Giardina, he's clearly in league with Patterson. There's no question about that, right? He's clearly in? In league with Patterson. I mean, he testifies, and it's clear on the record that he's dealing with Patterson. That's right. He denies knowing Price, but there's evidence in the record from Tracy Burgos that Giardina admits, tells her Price is my source also. I have to wait for Price to come through with some drugs for me. Now, that's in the record. Explain why it would be irrational, because it may be, and I'm interested in hearing it. Why would it be irrational for a jury to say, let's see, Price and Hoagland, excuse me, Giardina and Hoagland and Lenny and some others whose names are escaping me right now, they all work with Price and they all work with Patterson. With that level of overlap, we can infer that that's not mere coincidence and that there's something about Price and Patterson supporting each other with that same network that means they have a common objective and they're assisting each other. Why is that an irrational inference for a jury to draw? I'm not certain whether it's irrational, but I think what is clear is that it is speculative or ambiguous at best. And at the end of the day, I understand the court's burden and the court's standard in which it's going to review the testimony in this case, but I think it's difficult to look at the record as a whole. Again, Your Honor, pointing out parts of the record which I'm not quarreling with, which are absolutely accurate. However, when you take this testimony as a whole and stand back from it, I think it is difficult to say that you can put this hodgepodge together, any rational person, and come up with a conclusive opinion beyond a reasonable doubt. Let's look at this part of it. Price had dealt with Hoagland and dealt a lot of heroin, and they cut it and they bundled and stored it in her apartment, so he knew she was selling. Indeed, he fronted heroin to Hoagland. She would pay him later. Knowing that he was going to sell his T-shirts in Delaware, he wasn't going to be around, that she needed a new source of heroin, he introduced her to Patterson. She testifies that Price introduced me to Patterson. At one point it says he introduced me. Another point, I think in redirect, introduced him over the telephone. But that's a pretty important piece of evidence, isn't it? It is, but it is the mere introduction of one person to another under any circumstances. But with the knowledge of why she needed a referral, is that so beyond the pale? Well, is it bad judgment? Is it abhorrent behavior to introduce a drug fiend and who is also selling drugs to introduce her to a drug dealer? Absolutely, but is it criminal per se, and does it create a bonded conspiratorial relationship? I'm not certain we can leap all around to get to that particular conclusion, and I would submit we shouldn't in this particular juncture. Can I ask a question about lesser-included offense here? Assume for the sake of the discussion that we agreed with your assertion that Patterson can't be in the mix here and that the government was left with having only proved 700 grams and change of distributed heroin that's chargeable to price. Is it necessarily the case that the conviction would have to fall, or is that the functional equivalent of saying they proved the lesser-included offense of a conspiracy without hitting the amount where the maximum would be 20, but the conviction itself would stand in that? It's the appellant's position, Your Honor, that the conviction would not stand, and it would result in an order from this court returning this matter to the district court with instructions to vacate the conspiracy conviction. Now, I understand that's your position. My question to you is why wouldn't it be a lesser-included offense if the single thing they didn't prove was the drug amount? Because the single thing they didn't prove was an element of the offense. It was always an element of the offense, and the fact that they missed their target on that element means that the whole conviction should fall. What the court is saying is that we are going to change the element after the fact. No, I'm not saying anything. I'm asking a question. By definition, a lesser-included offense is an offense that's got less than all the elements of the charged offense. So why wouldn't it be a lesser-included offense for which a conviction could stand if the only thing the government failed to prove was the drug amount? Because I think that was the jury's decision, and the jury never were asked to reach that decision or make that decision. A jury was asked to make one decision on one element and then not being asked to make a decision on the lesser-included. I clearly agree, Your Honor, that if lesser-included offenses were part of this prosecution, the jury could have found him guilty of this, and I don't think we'd be here today. But it wasn't, and the jury had that chance. The government had that chance. They didn't take it, and so that's what makes this particular prosecution not, and I'm not trying to say that every drug conspiracy prosecution in the federal courts should be vacated based upon different factual scenarios. But in this very limited circumstance where this jury was presented with the elements of the offense and one of them was not met, I think this particular conspiracy conviction should be vacated. Returning full circle, if we were to disagree with you on the element aspect of your argument but find that there was insufficient evidence to support the conspiratorial agreement, the co-conspirator Patterson, I suppose one can say something akin to a concurrent sentence doctrine argument that you've conceded the 20-year sentence on the substantive counts was appropriate. So if we remand for resentencing, I suppose we're, it is what it is, right? It is what it is, and I'm out of time clearly, but there were other arguments in my brief concerning the manager role, which could affect sentencing guidelines to some degree that would make a sentencing hearing relevant if the court made that decision. Well, we've taken you way beyond your time. We'll get you back on rebuttal. Okay. Thank you, Your Honor. Thank you. May it please the Court. I'm Ted Smith. I'm an assistant United States attorney for the Middle District of Pennsylvania stationed in Harrisburg, representing the United States, who is the appellee. Since Apprendi, we have treated drug quantity in a manner similar to an element, not of the offense, but of the statutory enhancement factors that give rise to a greater mandatory, or excuse me, a greater statutory maximum. Now, you can argue semantically whether that makes it an element of the offense or whether it just makes it something akin to the element of the offense. If it is treated as an element of the offense and this Court were to find in this case that it were not proven or that it were not proven by sufficient evidence, then the next lowest drug quantity that the evidence does support would be a lesser included offense. But one that wasn't charged, right? As Mr. Farrell pointed out, had the government said to the jury and the Court at the time, look, we want a lesser included offense charge here, that would be a completely different case. But that didn't happen here. And so, if there really weren't a conspiracy between Patterson and Price and you, therefore, failed to prove a kilogram or more, how could the conviction of a count that charges a kilogram or more and which under Apprendi, therefore, exposed the defendant to greater than the statutory maximum for the amount less than a kilo, how can it be the case that that conviction could stand? Because in effect, there was a lesser included offense instruction. And the reason for that is that the jury was asked first to decide whether there was proof beyond a reasonable doubt of the three elements of a conspiracy. And only after they rendered a verdict that he was guilty of a conspiracy were they asked to make a quantity determination. So the jury was, with the agreement of all counsel, the jury was asked to decide whether the elements of a simple conspiracy for no specified amount were proven beyond a reasonable doubt. And they said yes. So at the very least, the indeterminate, the conspiracy to distribute an indeterminate amount should stand. Now, in this case, there happened to be some other enhancements that were pled in the indictment that were taken to the jury. And the jury found those statutory enhancements to have been proven beyond a reasonable doubt. So the 20-year, which I would suggest is the absolute minimum statutory maximum, I hope I'm making myself clear that could possibly apply here, would be doubled because of the two other enhancements that by statute say you double the statutory maximum otherwise applicable under 841B1. And those two enhancements are the distribution to a pregnant person and the distribution by a person over 21 to somebody under 18. If we disagreed with your position that Patterson was part of this conspiracy, wouldn't we have to send it back to the district court? For resentencing? Yeah, for resentencing. I mean, how could it be the case that we could assume that without that piece in, the judge would arrive at the exact same sentence? No, you would not have to send it back. And the reason is this. The sentence imposed was 27 years. Twenty-seven years is within the statutory maximum that is based on facts submitted to the jury, regardless of whether Patterson is included in the conspiracy. The district court then goes to another whole set of rules called the United States Sentencing Guidelines and determines drug quantity under the sentencing guidelines. It's laid out in the pre-sentence report. Sure, all that's understood, but those are decisions. You're asking us on the basis of the assumption I've asked you to make to assume that the court would hit the very same mark if Patterson weren't in the mix. How could we fairly do that? Because Judge Muir knows, because it's been held for several years now for certain, that he need not apply the same burden of proof to guideline sentencing determinations that the jury applied to the statutory maximums, and therefore Judge Muir found that the guideline calculation in the pre-sentence report was correct with the exception of his lowering one of the enhancements, one of the guidelines enhancements by one level. And so the question then becomes, did he clearly err in finding those facts based upon a preponderance of the evidence standard? And so I think he didn't. But I really don't want to abandon the issue of whether Robinson should be... I mean, I think it makes no difference, but the court seems to be troubled by whether Robinson was a conspirator. Patterson. Excuse me, Patterson was a conspirator. I guess you were in trouble because you really didn't address it in your brief. You did not tell us why Patterson should be considered, in your argument section of your brief, a co-conspirator. So why don't you tell us now? My co-conspirator in my office did not put that in the brief, and I'm sorry that he did not, but let me tell you why he is. The lifeblood of this conspiracy was very, very different than the lifeblood of most conspiracies. Usually when one seller introduces a buyer to another seller, the buyer then scams the first seller by eliminating the middleman and going to the top seller, and the first seller who made the introduction feels aggrieved by that. This is a conspiracy that absolutely lived and breathed on people, one level of seller, introducing users and sellers to the next level up. It started with Hoagland not being introduced to Patterson, but Hoagland being introduced to the defendant because her prior seller was this guy Carlos down in Philadelphia, and the transaction was almost identical. I'm going to introduce you to the defendant, to Price, Brown, because he can come up with the quantities that I can't come up with. How come Carlos isn't part of this conspiracy then? By your reasoning, shouldn't everything that Carlos has done been part of this too? But he's no place in this. Well, he's not charged in it, but the other people who did that are, and there are eight instances of it happening. Dodson and Hoagland introduced Dunka to the defendant, to Price. Hoagland herself is introduced, I said that, to the defendant by her supplier, Carlos. Why don't you go back to Patterson? That's the one we're interested in. Well, and what I'm saying is that what was done when the defendant introduced Hoagland to Patterson was exactly what each lower level of the conspiracy had already done. And as we've discussed already, when the defendant introduced Hoagland to Patterson, he did it with this, it wasn't knowledge. It wasn't knowledge. It was specific intent. It was, I'm introducing you to him so he can sell the drugs to you that you're having trouble getting from me. Now, why would he do that? She actually said one reason why he would do it, and that's because he was concerned about her owing him money, and the way to make sure he gets his money is if she keeps dealing drugs and making a profit off of it. And if she does that with... Does that make Patterson and Price co-conspirators? Let me read you something from your own brief. Page 15, quote, Robinson stopped purchasing heroin from Price on a regular basis because he had found a more reliable supplier in Ollie Patterson, close quote. Now, when I read that, that sounds like Price and Patterson are competitors, not co-conspirators. But they're not. The defendant wasn't the least bit concerned about the fact, and none of these lower dealers ever was concerned when they found out that the buyer was going to someone over their head. This was really, this was an aggressively spreading kind of a drug conspiracy whose very purpose was to keep the supply flowing to whomever needed it so that when someone was using and selling more than this level dealer could supply, this level dealer would expressly introduce that person to the next level up. I want to ask you about why you called Patterson, the you, the editorial you, called Patterson as a witness. That was yet another co-conspirator from my office, and he did it because he was almost forced to do it by defense counsel. No, wait a minute. No, no, no. Not quite forced. No. You called Patterson as your witness and never even asked him on direct if he was involved with Price. Our, well, asked him, what we asked him was to corroborate where he lived and that kind of information. Now, what preceded that. Didn't even ask him on direct if he was involved with Price. Why would you call him if you're not going to ask that question? Look, he could answer, he could lie to you. Because our, because our. Or he could agree that he was involved. Because our. He was never asked the question. May I ask, may I answer your Honor's question? Okay, go ahead. Because he and the prosecutor informed the court that that morning he had gone to speak to Patterson, and Patterson had refused to speak to him without counsel present, and he believed that Patterson would refuse to testify if he were called to the stand. And the prosecutor then stated to the court, I believe it would be improper for me to put him on the stand and have him refuse to testify. And Judge Muir said, well, who would it be, the prosecutor said, prejudicial. And Judge Muir said, well, who would it prejudice? And the prosecutor said, defense, the defense. Judge Muir then turned to Mr. Farrow and said, what do you think about that? And Mr. Farrow said, I think in some instances it could be prejudicial, but here I don't think it would. And I think the witnesses, because there was another one, should be produced. So the prosecutor put him on, and the testimony that the prosecutor elicited from him was relevant. It wasn't very complete. That's an understatement. But it was relevant. And he was then subjected to cross-examination by defense counsel so that Which then permits you to argue he was intimidated, he was afraid, in summation. But without the defense cross of Patterson, you know, you didn't even have that argument. You had nothing out of Patterson's direct, zero. But we were expressly asked to put him on the stand. I mean, I can direct court to do that at first. That's probably a tangential issue. You go back to your argument. But I think that's why, because I wondered, why did he do that? And I wondered why, in view of the last argument made by Mr. Farrow, whether it was proper for him to do that. And I was actually concerned about whether my colleague had put a witness on the order, a witness who he knew had, quote, gone south, unquote, in order to get him to take the fifth, for instance, on the stand. But the facts of the case show that he did exactly the opposite, that he really tried to do the right thing here. What was the common purpose? What was the common purpose that the government proved beyond a reasonable doubt existed between Price and Patterson? To distribute heroin. And to distribute heroin to other people who they both not only knew would redistribute it, but who they both intended to have redistributed it. Now, in Pressler, the court said that may not be enough where a conspiracy isn't proven at all. But Pressler then looks at its prior precedent, Gibbs, and says that the distinction between the Pressler case and the Gibbs case is that in Gibbs, there was proof beyond a reasonable doubt of a conspiracy, and the only question was whether Sindor was a member of it. That translates to this case. Well, in Gibbs, in Pressler, the specific point is made that you could look at the same behavior of a street-level dealer and understand it to be part of a conspiracy if it had been proven already that there was a conspiracy which involved certain parameters. You'll only work within a geographic area, something like that. What did the government – that's the language of Pressler. What did the government prove in the way of an existing conspiracy from which one could look at Patterson's behavior and say, ah, that fits in this conspiracy. That's part and parcel of the sort of thing that the court noted as an example in Pressler. Well, the government proved a conspiracy at the very least between the defendant and Hoagland and Robinson and Chachi and then some other people whose names I'm not very good at remembering either, okay. And the government proved that a number of those people had been brought into the conspiracy with defendant by this process of referring up to the next level and then defendant, who lived in the very same neighborhood as Patterson and who had grown up with Patterson, referred Hoagland to Patterson, knowing, not only knowing, but intending that her referral of Hoagland to Patterson would facilitate – I see my time is up. If I may finish the sentence and I'll put a period on it sooner rather than later – would facilitate Hoagland's dealing of drugs, not only her use of drugs, but her dealing of drugs. And as I said – no, I'll put the period right there unless the court has any other questions. Thank you. Thank you, Your Honors. Rebuttal. If I may please the court again. With respect to rebuttal from the government's argument, I do not think they addressed the issue of whether or not the drug quantity is in fact an element of this offense. And I know the court is familiar with the cases because you, in fact, referred us to several cases earlier this week to focus on. And I would indicate to the court that I think there's strong support for the position of the appellant that drug quantity is, in fact, a separate and distinct element of the offense, specifically the charge quantity, and that the failure to meet that should vacate the entire conspiracy. You acknowledge that the finding of quantity was made by the jury after they found Mr. Price guilty of the conspiracy? I do, Your Honor. Okay. But in my opinion, it would be analogous to if you charge someone with theft of a motor vehicle and first do you find that someone committed theft and then they had a special interrogatory, was it a motor vehicle? And in that particular case, those are two separate and distinct elements that each must be proven beyond a reasonable doubt. So if the jury says, yeah, we find the guy. But you also acknowledge this is post-apprendi practice, is it not? It is, Your Honor. Okay. In finishing the element thought that if you charge someone with theft of a motor vehicle and the jury finds that they stole a bicycle, they cannot be convicted of that particular offense for which they've been charged. And in this case, you've been charged with conspiring to distribute a kilogram of more. The jury's verdict says, yes, there was a conspiracy, but in my opinion there is insufficient evidence to support the second element, that is a conspiracy to distribute more than a kilogram of heroin. And again, I think there's support in the case law both in Alton and also in the case of United States v. Dunmire, which is in the Tenth Circuit, which I referenced in my supplemental memorandum letter, which also stands for the clear unequivocal position that quantity is, in fact, an element. The final thing, Your Honor, I see that I'm out of time. Thank you, Your Honor. The final thing I would say with respect to an issue that was not really addressed in my first argument but was addressed in the government's and the court's questioning is the prosecutor's closing argument. I understand that there is a layered approach that this court must go through to find whether or not it was, in fact, an error and what kind of error, and I won't go through that scenario. But I would say, Your Honor, that you have to look at that statement and that argument in context. And I think when you look at it in context, it's egregious. And that is what the court hinted at. That witness was put on there by the government, in my opinion, to do nothing more than to say, I'm from the projects just like this guy. We're all animals. We can't control ourselves. We lie. We steal. We cheat. The government tried to bring that out in cross-examination to say that somehow the unequivocal testimony of Patterson was shaded simply because my client and his family and their family come from the same projects. My client has a right to be tried in a fair trial and for those types of arguments not to be part of it. And when the government says, ignoring the testimony from their own witness, that you know why he said what he said because his family is still back there, I think that injects something into a trial that, one, is not necessary, two, is highly prejudicial, and three, is quite frankly offensive. And so I ask the court to pay special attention to that particular argument because I do feel that it's meritorious whether you like Foster Price or not. And I have made no arguments to tell you to like him. He deserves a fair trial and he deserves not to have accusations placed at him by the government such as those. Thank you, Mr. Farrell. Thank you, Your Honors. We will take the case under advisement.